Thomas D. Adams, OSB #861376
Michael M. Feinberg, OSB #891660
Bruce W. Leaverton, WSBA #15329
701 Fifth Avenue, Suite 3300
Seattle, WA 98104
Telephone: 206-223-1313
Facsimile: 206-682-7100
Email: tadams@karrtuttle.com
Email: mfeinberg@karrtuttle.com
Email: bleaverton@karrtuttle.com
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

AT PORTLAND

| | |
|---|---|
| KEYBANK, N.A., an Ohio Corporation; KEYBANK EQUIPMENT FINANCE, a division of KeyBank National Association<br><br>Plaintiffs,<br>vs.<br><br>MEDURI FARMS, INC, an Oregon corporation, ESTELLA LLC, an Oregon Limited Liability Company<br><br>Defendant. | Case No. 3:23-cv-01683<br><br>COMPLAINT FOR BREACH OF CONTRACT AND APPOINTMENT OF RECEIVER |

KeyBank, N.A. ("KeyBank") and Key Equipment Finance ("KEF"), a division of KeyBank (collectively "Plaintiffs"), by and through counsel, allege as follows:

**I. PARTIES**

1. Plaintiff KeyBank is a national association, whose main office and principal place of business is 127 Public Square, Cleveland, OH 44114.

COMPLAINT - 1
#5486227 v2 / 73219-007

2. Plaintiff KEF is a division of KeyBank National Association, whose principal place of business is 1000 South McCaslin Boulevard, Superior, CO 80027.

3. Defendant Meduri Farms, Inc. ("Meduri") is a corporation organized and existing under the laws of the state of Oregon, with its principal place of business in Polk County at 12375 Smithfield Road, Dallas, OR 97338.

4. Defendant Estella, LLC ("Estella") is a limited liability company organized and existing under the laws of the state of Oregon, with its principal place of business in Marion County at 2453 Ridgeway Dr. SE, Turner, OR 97392.

## II.    JURISDICTION AND VENUE

5. This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the citizenship of Plaintiffs KeyBank and KEF is diverse from the citizenship of Defendants Meduri and Estella (collectively referred to herein as "Defendants") and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendants reside and transact business in the state in which this District is located, and because events and omissions giving rise to this action occurred within the judicial district of the United States District Court for the District of Oregon, Portland Division.

## III.    FACTS

7. Meduri was established in 1984 and has continuously operated its business in the state of Oregon. Meduri is an S corporation that produces and supplies specialty dried fruits to manufacturers throughout the nation and around the world. Meduri has two plants located near Dallas, Oregon and another plant located in Salem, Oregon. It also has approximately 471 acres planted of tart cherries and blueberries. Meduri's dried fruit products include sweet and

COMPLAINT - 2
#5486227 v2 / 73219-007

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

sour cherries, strawberries, blueberries, apples, raspberries, cranberries, peaches, as well as other fruit for national and global distribution. The primary ingredients of the finished goods are purchased from various growers and suppliers in Oregon, Washington, California, Canada, China, Mexico, and South America. Meduri grants credit to national and international customers. Its customer base is made up of retail and wholesale customers who purchase dried fruit for a variety of products including, but not limited to, snack products, confectionery products, and ingredients.

8. Estella is a limited liability company owned by certain stockholders of Meduri. Estella leases property to Meduri and is a guarantor of certain loans made by Plaintiffs to Meduri. Estella also holds collateral in which Plaintiffs have a perfected security interest pursuant to the loan documents described herein.

### A. The LOC Loan

9. Meduri as "Borrower" and KeyBank as "Lender" entered into a line of credit loan (the "LOC Loan"), as evidenced by various loan documents (and all amendments, modifications and changes in terms thereto) including, without limitation: (1) a Second Amended and Restated Promissory Note Revolving Line dated October 3, 2019, in the original principal amount of Twenty Two Million Five Hundred Thousand and 00/100 Dollars ($22,500,000.00), which amended, restated, renewed, and modified an Amended and Restated Promissory Note dated August 6, 2013, and all prior and subsequent modifications, amendments, and restatements of the LOC Note (collectively the "LOC Note"), and (2) a Second Amended and Restated Loan Agreement dated October 3, 2019, which amended and restated in its entirety that prior Amended and Restated Loan Agreement dated August 5, 2013, and that Business Loan Agreement (Asset Based) dated June 22, 2010, and all amendments and

COMPLAINT - 3
#5486227 v2 / 73219-007

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

modifications thereto, including a Modification of Loan Documents dated December 5, 2019 (the "Modification") (collectively the "LOC Loan Agreement").

10. As consideration for the LOC Note and as a condition thereto, Meduri executed an Agricultural Security Agreement dated July 6, 2005, granting KeyBank a security interest in substantially all of Meduri's personal property, including inventory, chattel paper, accounts, equipment, general intangibles, farm products, farm equipment, and all other collateral provided for therein; this Agricultural Security Agreement was modified by agreement on May 28, 2013 (collectively, this Agricultural Security Agreement and its modification are referred to herein as the "Meduri Security Agreement").

11. As consideration and to further secure the LOC Note, and as a condition thereto, Estella also executed and delivered to KeyBank an Agricultural Security Agreement dated July 6, 2005, granting KeyBank a security interest in all of Estella's personal property, including all equipment, farm equipment, and all other collateral provided therein (the "Estella Security Agreement").

12. The Meduri Security Agreement and the Estella Security Agreement are collectively referred to herein as the "LOC Security Agreements." The Meduri Security Agreement collateral and the Estella Security Agreement collateral are collectively referred to herein as the "LOC Loan Collateral."

13. The LOC Note, the LOC Loan Agreement, and the LOC Security Agreements are collectively referred to herein as the "LOC Loan Documents."

### B. The KEF Loan

14. Meduri as "Borrower" and KEF as "Lender" subsequently entered into a loan (the "KEF Loan"), as evidenced by various loan documents (and all amendments, modifications

COMPLAINT - 4
#5486227 v2 / 73219-007

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

and changes in terms thereto) including, without limitation: (1) A Master Security Agreement dated on or around December 13, 2016, providing terms and conditions applicable to the KEF Loan, which was secured by personal property (the "KEF Master Security Agreement"); (2) a promissory note dated December 15, 2016 in the original principal amount of Ten Million Nine Hundred Thousand and 00/100 Dollars ($10,900,000.00) (the "KEF Note"); and (3) a collateral schedule (the "KEF Collateral Schedule"), describing the specific collateral securing Meduri's obligations to KEF under the KEF Note.

15. As consideration for and to further secure the KEF Loan, Meduri and Estella each executed a Continuing Security Agreement dated December 13, 2016 (collectively the "KEF Continuing Security Agreement"), under which each granted a security interest in substantially all its personal property (the "KEF Loan Collateral").

16. The KEF Loan, the KEF Master Security Agreement, the KEF Note, and the KEF Collateral Schedule are collectively referred to herein as the "KEF Loan Documents."

### C.  The P-Card Loan

17. KeyBank also provided Meduri with a purchase card facility (the "P-Card Loan"), as evidenced by various agreements and other documents (the "P-Card Loan Documents").

18. The LOC Loan, the KEF Loan, and the P-Card Loan are collectively referred to herein as the "Loans." The LOC Loan Documents, the KEF Loan Documents, and the P-Card Loan Documents are collectively referred to herein as the "Loan Documents."

19. Plaintiffs have perfected their security interests under the Loan Documents by continuous form UCC filings.

### D.  Defaults

COMPLAINT - 5
#5486227 v2 / 73219-007

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

20. For more than three years, Defendants have consistently been unable to pay their debts and fulfill their obligations to Lender and KEF when due under the Loan Documents.

21. Between October 5, 2020, and August 18, 2023, Plaintiffs entered into multiple forbearance agreements (the "Forbearance Agreements") with Defendants, wherein Plaintiffs agreed to forbear from exercising their rights and remedies with respect to Defendants' various and continuing defaults under the Loan Documents, while Defendants unsuccessfully sought to restructure, refinance, or sell their business operations in order to cure these defaults and pay off the Loans.

22. Pursuant to the most recent forbearance agreement, dated August 18, 2023 (the "Ninth Forbearance Agreement"), Plaintiffs agreed to continue to forbear and extend the maturity date on the Loans to October 30, 2023 (the "Maturity Date"). In exchange, Defendants agreed to pay all their obligations under the Loans to Plaintiffs on or before the Maturity Date. Defendants also agreed to the retention of an investment banker and the appointment of a Chief Restructuring Officer ("CRO") to oversee Defendants' sale or refinance efforts. Defendants further agreed to timely provide KeyBank with a written commitment from a qualified capital provider (the "Recapitalization Commitment") and to a sale, refinance, or recapitalization transaction that would generate sufficient cash to pay off the long past due Loans.

23. On November 9, 2023, Plaintiffs sent to Defendants a Notice of Default/Reservation of Rights Letter (the "NOD/ROR Letter"), advising Defendants of their various most recent defaults under the Ninth Forbearance Agreement, the relevant Loan Documents, and the other Forbearance Agreements, including without limitation Meduri's failure to pay the Loans on or before the Maturity Date (the "Payment Default"). Pursuant to Section 2(g)(vi) of the Ninth Forbearance Agreement, Meduri's Payment Default

COMPLAINT - 6
#5486227 v2 / 73219-007

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

"automatically and fully accelerated" all its payment obligations under the Loans, including without limitation its duty to pay all accrued and accruing "Contract Rate" and Default Rate" interest as defined in the Ninth Forbearance Agreement and the Loan Documents.

24. As of November 9, 2023, the principal amounts owing on the Loans are as follows:

| | |
|---|---|
| LOC Loan Principal | $17,707,980.85 |
| KEF Loan Principal | $253,254.95 |
| P-Card Principal | $5,695.06 |
| SBA PPP2 Loan | $2,000,000.00 |
| Attorneys' Fees and Costs | $48,552.55 |
| Accrued Default Interest | $665,615.10 |
| Total Meduri Loan Obligations | $20,681,098.51 |

The foregoing Obligations include the amounts owing to KeyBank from Meduri under its $2.0 million Paycheck Protection Program Loan. KeyBank reserves all rights relating to that loan.[1]

25. The LOC Loan continues to accrue interest at a rate of 3.00 percent per annum above the "KeyBank Prime Rate," as defined in the Loan Documents (the "LOC Contract Interest Rate"), plus an additional 3.000 percentage points per annum (the "Default Rate," which together with the LOC Contract Interest Rate is referred to herein as the "LOC Interest"). The KEF Loan continues to accrue interest at the rate of 3.72% per annum (the "KEF Interest").

---

[1] Meduri has appealed the denial of its application for forgiveness of the PPP loan. The appeal is presently pending. Key Bank reserves the right to amend the complaint in the event Meduri's complainti is denied.

COMPLAINT - 7
#5486227 v2 / 73219-007

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

26. Meduri's outside accountants have indicated that Joseph and Cindy Meduri have out taken in excess of $2.0 million in shareholder loans, in violation of the Loan Documents. In fiscal year 2022, Meduri lost in excess of $11.0 million from its operations and despite those massive losses, the Meduri Family took out shareholder loans during that same year in excess of $894,232. Recently, Meduri's accountants have indicated that without a substantial cash infusion, the company is not capable of continuing as a going concern.

27. Defendants are insolvent or are in imminent danger of insolvency. Defendants are also unable to pay their ordinary operating expenses on a current basis, nor are they able to pay their past due and owing obligations on the Loans. Those obligations continue to increase substantially through the accrual of LOC Interest and KEF Interest.

28. Furthermore, Defendants unlawfully misappropriated cash proceeds from advances under the Loans and/or cash proceeds from LOC Loan Collateral and KEF Loan Collateral (collectively the "Collateral"), and diverted and distributed those funds as undocumented "loans" (the "Collateral Diversions") to shareholders, family members of shareholders, or other affiliated entities, all in direct violation of the express terms of the Loan Documents and the Forbearance Agreements, including without limitation Section 2(g)(xix) of the Ninth Forbearance Agreement (the "Diversion Defaults").

29. Defendants did not report all of their Collateral Diversions to Plaintiffs in their financial reporting required under the Loan Documents and Forbearance Agreements. Defendants' transferees used the Collateral Diversions for non-corporate purposes, including the payment of personal expenses of shareholders and their family members. Such wrongful acts constitute gross mismanagement of the Defendants' business affairs and contributed to

COMPLAINT - 8
#5486227 v2 / 73219-007

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

Defendants financial problems and insufficient working capital to pay operating expenses on a current basis.

30. Despite three years of KeyBank and KEF forbearance under ten different Forbearance Agreements, Meduri has repeatedly failed in its efforts to find a new lender that could refinance and take out the LOC Loan and the KEF Loan. It has also had difficulty finding and retaining a chief financial officer. Over this long period of forbearance, Joe Meduri (the company's majority shareholder) has steadfastly refused to pursue a sale of the company, preferring instead to pursue a refinancing of its operations, despite its distressed financial condition. On or about July 31, 2023, Meduri retained Kirk Lohmolder as its Chief Restructuring Officer ("CRO") to spearhead the company's last-ditch effort to refinance. Mr. Lohmolder's duties included "to take all actions necessary to support the Company's refinance effort" and to institute "changes required to position the Company for sale." Unfortunately, like prior refinancing efforts during earlier Forbearance Agreements, those efforts failed. In recent days, at the direction of Joseph Meduri (the company's majority shareholder and Chief Executive Officer), Defendant Meduri has declined to extend its retention of Kirk Lohmolder as its CRO. Mr. Meduri has begun altering Mr. Lohmolder's management changes, including reinstating himself as CEO and his brother-in-law, Dennis Bell (whom Mr. Lohmolder terminated), as a full-time employee.

31. Because Meduri has been unable to retain a chief financial officer, a financial consultant, Carolyn Rayback, has instead provided the financial record keeping and other accounting services necessary to sustain the company's operations. She recently announced her intention to resign her post by year's end. To address this financial management loss, the company in recent days hired Michael DeDona. When Mr. Meduri advised Mr. DeDona on

COMPLAINT - 9
#5486227 v2 / 73219-007

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

the third day of his employment that his chief focus should be obtaining refinancing for the company, Mr. DeDona resigned, stating the company did not have a balance sheet that could support such an effort.

32. As a remedy available to Plaintiffs upon any event of default, including without limitation the Payment Default, the Diversions Defaults, and "Existing Defaults" under the Forbearance Agreements, the Meduri Security Agreement and the Estella Security Agreement each provides in pertinent part:

> **Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding and pending foreclosure or sale, and to collect the Rents from the Collateral and apply the proceeds, over and above the costs of the receivership, against the Indebtedness. The receiver may serve without a bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as receiver.

33. And pursuant to the Ninth Forbearance Agreement, Plaintiffs may do any one or more of the following, all of which are expressly authorized by Defendants:

> Borrower and each Borrower Party agrees and will stipulate to the appointment of a general receiver for the Borrower and Estella LLC and a custodial receiver for the Guarantor or Third Party Collateral in the event of default under this agreement, including without limitation the authorization of a general and/or custodial receiver to conduct a private or public sale of the Collateral free and clear of liens and other interests. The Court may appoint a general and custodial receiver as a single entity (or more than one entity) as may be required by law and such receiver(s) shall be selected and/or reasonably acceptable to KeyBank in its discretion.

34. Under these contractual provisions and due to Defendants' numerous material defaults under the Loans, Defendants have agreed that Plaintiffs have the right to the appointment of a general receiver.

COMPLAINT - 10
#5486227 v2 / 73219-007

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

35. Management of the Defendants is ineffective and dishonest. A receiver is necessary to take control of Defendants and immediately work to mitigate any further losses and fraudulent and unlawful diversions of Collateral and funds. Absent the appointment of a receiver, the financial condition of Defendants will continue to deteriorate. Defendants will likely continue to divert Collateral and funds unlawfully and interfere with Plaintiffs' rights and remedies to its Collateral under the Loan Documents.

36. The immediate appointment of a general receiver is necessary to mitigate any further losses for the benefit of all creditors, preserve the Collateral, and prevent additional fraudulent and unlawful diversions of Collateral and corporate funds. The appointment of a general receiver is also necessary to protect the claims and interests of Plaintiffs and Meduri's other creditors by conducting an orderly wind down and liquidation of Defendants' business operations. Other remedies are either not available or are inadequate.

37. MorrisAnderson & Associates, Ltd. ("MorrisAnderson") is an experienced receivership and asset management services company with extensive experience handling distressed business situations. MorrisAnderson does not represent KeyBank or KEF in this matter and is qualified to serve as an effective and independent general receiver.

## IV. CAUSES OF ACTION

### Breach of Contract: LOC Loan

38. Plaintiffs' previous allegations are incorporated by reference as though fully set forth herein.

39. Defendants have materially breached the LOC Loan Documents and Forbearance Agreements by, among other things, failing to pay Plaintiffs all amounts due and payable.

COMPLAINT - 11
#5486227 v2 / 73219-007

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

40. As a direct and proximate result of Defendants' contractual breaches, Plaintiffs have been damaged in the amount of at least $18,432,147, including the unpaid balance of the principal owing on the LOC Loan, accrued interest, attorneys' fees and costs owing to Plaintiffs under the LOC Loan Documents, and such amounts relating to any other advances by Plaintiffs to defray the administrative costs of the receivership.

### Breach of Contract: KEF Loan

41. Plaintiffs' previous allegations are incorporated by reference as though fully set forth herein.

42. Defendants have materially breached the KEF Loan Documents and Forbearance Agreements by, among other things, failing to pay KEF all amounts due and payable.

43. As a direct and proximate result of Defendants' contractual breaches, Plaintiffs have been damaged in the amount of at least $253,059.02, including the unpaid balance of the principal owing on the KEF Loan, accrued interest, attorneys' fees and costs owing to Plaintiffs under the KEF Loan Documents, and such amounts relating to any other advances by Plaintiffs to defray the administrative costs of the receivership.

### Breach of Contract: P-Card Loan

44. Plaintiffs' previous allegations are incorporated by reference as though fully set forth herein.

45. Defendants have materially breached the P-Card Loan Documents by, among other things, failing to pay Plaintiffs all amounts due and payable.

46. As a direct and proximate result of Defendants' contractual breaches, Plaintiffs have been damaged in the amount of at least $5,695.06, including the unpaid balance of the

COMPLAINT - 12
#5486227 v2 / 73219-007

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1  principal owing on the P-Card Loan, any accrued interest thereon, attorneys' fees and costs owing to Plaintiffs under the P-Card Loan Documents, and such amounts relating to any other advances by KeyBank to defray the administrative costs of the receivership.

### Appointment of General Receiver Pursuant to FRCP 66

47.  Plaintiffs' previous allegations are incorporated by reference as though fully set forth herein.

48.  Plaintiffs are entitled to an order appointing MorrisAnderson as general receiver for Defendants for good cause, including without limitation: (a) because the Collateral is in danger of being lost of materially impaired; (b) because transfers and diversions made by Defendants are fraudulent as to Plaintiffs, and the transfers were made with actual intent to hinder, delay, or defraud Plaintiffs; (c) because Defendants are insolvent or are in imminent danger of insolvency, and receivership is reasonably necessary to protect Defendants' property and to preserve the interests of Plaintiffs as creditors; and (d) because the appointment of a receiver is reasonably necessary to secure justice to the parties.

49.  Plaintiffs are also entitled to the appointment of a general receiver pursuant to the Loan Documents and the Ninth Forbearance Agreement.

50.  Defendants have expressly waived the requirement of a bond and Plaintiffs therefore request that the Court fix the amount of the receiver's bond at $10,000.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request relief as follows:

A.   For judgment against Defendants and in favor of Plaintiffs for all sums due under the Loan Documents, and all costs and expenses incurred by Plaintiffs in connection with their enforcement and any receivership ordered by the Court, including but not limited to their

COMPLAINT - 13
#5486227 v2 / 73219-007

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1  attorneys' fees and costs and any other sums advanced by Plaintiffs under the Loans or the

2  Appointment Order, all such sums to bear interest at the default rate prescribed by the Loan

3  Documents.

4        B.      For appointment of a receiver, pursuant to the Loan Documents and the Ninth

5  Forbearance Agreement, or as provided for by statute or common law, and with bond fixed at

6  $10,000.

7        C.      For such other relief as the Court deems necessary and proper.

 

DATED this 14th day of November 2023.

/s/Thomas D. Adams
Thomas D. Adams, OSB #861376
Michael M. Feinberg, OSB #891660
Bruce W. Leaverton, WSBA #15329*
701 Fifth Avenue, Suite 3300
Seattle, WA 98104
Telephone: 206-223-1313
Facsimile: 206-682-7100
Email: tadams@karrtuttle.com
Email: mfeinberg@karrtuttle.com
Email: bleaverton@karrtuttle.com
*Attorneys for Plaintiffs*
 *Pro hac vice application pending

COMPLAINT - 14
#5486227 v2 / 73219-007

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100